FILED
2019 Jul-03 PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| KENNETH YOUNG, | ) |
| Plaintiff, | ) |
| v. | ) 7:18-cv-02083-LSC |
| TURNER SPECIALTY SERVICES, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OF OPINION**

Before this Court is Defendant, Turner Specialty Services, LLC ("Turner's"), Motion to Dismiss and to Compel Arbitration. (Doc. 7.) The motion (doc. 7) has been fully briefed and is ripe for review. For the reasons explained more fully herein, the motion (doc. 7) is due to be granted.

**I.   BACKGROUND**

Defendant Turner Specialty Services, LLC ("Turner") hired Plaintiff Kenneth Young ("Young") in July 2012 to work at the Hunt Refining Company Site in Tuscaloosa, Alabama. After Young was hired, Turner adopted a mandatory arbitration program. In early 2013, Turner promulgated a Dispute Resolution Agreement ("DRA") containing the terms of its arbitration program. The DRA was distributed to Turner's employees by mailing copies to the employee's home

address and posting the DRA at work sites and on the company website. Pursuant to the DRA, Turner and its employees mutually "agree[d] to resolve any and all claims, disputes or controversies arising out of or related to [the employee's] employment . . . exclusively by binding arbitration. . . ." (Doc. 7-1 at Ex. 2.) Examples of claims covered by the DRA include:

> claims arising under any statutes or regulations applicable to employees or applicable to the employment relationship, such as . . . the Americans with Disabilities Act (as amended), the Family and Medical Leave Act, and the Fair Labor Standards Act.

(*Id.*)

On August 21, 2013, Young returned his signed "Employee Handbook Receipt and Acknowledgement of Mandatory Arbitration for all Employment Disputes" (hereinafter the "Acknowledgement"). Young signed the Acknowledgment, but did not place his initials by several provisions in the Acknowledgment including the specific provision that asked him to acknowledge, agree to, and comply with the DRA. (Doc. 7-1 at Ex. 1.) However, the paragraph above the employee's signature line on the Acknowledgement states that "by my initials and signature, I accept all Company policies, rules, procedures, and regulations as a condition of employment." (*Id.*) Young's employment remained at-will. (*Id.*)

In January 2017, Turner revised the DRA and mailed copies of the revised DRA to all its employees. The initial paragraph of the 2017 DRA titled "Notice to New Employees/Re-Hires" states:

> [a]ny individual ("Employee") who wishes to be employed by . . . Turner Specialty Services, L.L.C., . . . must read and sign the following Dispute Resolution Agreement as part of their hiring package. If you desire, you may stop the hire-in process at this point and take the time to review the Dispute Resolution Agreement, which is found below. You must, however, sign the Dispute Resolution Agreement if you wish to continue the hire-in process and if you wish to be employed by the Company. <u>All Company employees hired on or after January 1, 2017, are required to agree to the Dispute Resolution Agreement below</u>. Even if you do not sign the Dispute Resolution Agreement, you will be bound to it in accordance with applicable state law.

(Doc. 7-1 at Ex. 2.) (emphasis in original). The 2017 DRA grants the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability, of this DRA, including, but not limited to, any claim that any part of this DRA is unenforceable, void, or voidable." (*Id.*) Young did not sign the 2017 DRA, although a copy of it was mailed to him. After Young was mailed the 2017 DRA, he continued to work for Turner through December 2017. In December 2018, Young filed this action alleging that Turner violated his rights under the Americans with Disabilities Act ("ADA") and the Family Medical and Leave Act ("FMLA"). (Doc. 1.)

## II. STANDARD

In ruling on a motion to compel arbitration, this Court applies a standard similar to review of a motion for summary judgment. S*ee In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate"). A motion for summary judgment is due to be granted upon a showing that "no genuine dispute as to any material fact" remains to be decided in the action and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III. DISCUSSION

Young avers that Turner's motion to compel is due to be denied because there is no evidence that Young agreed to arbitration. "The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore v.*

*Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). In the absence of "such an agreement, a court cannot compel the parties to settle their dispute in an arbitral forum." *Id.* (internal quotation marks and citations omitted). The Eleventh Circuit has consistently maintained that "*state law* generally governs whether an enforceable contract or agreement to arbitrate exists." *Id.* (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (emphasis added)).

Under Alabama law, the movant must prove "the existence of a contract calling for arbitration and . . . that [the] contract evidences a transaction affecting interstate commerce" in order to compel arbitration. *TranSouth Fin. Corp. v. Bell*, 739 So.2d 1110, 1114 (Ala. 1999). If the movant carries its burden, the non-movant must prove "that the supposed arbitration agreement is not valid or does not apply to the dispute in question." *Jim Burke Auto., Inc. v. Beavers*, 674 So.2d 1260, 1265 n.1 (Ala. 1995).[1]

Although Young asserts that there is no evidence that he agreed to arbitration or executed an agreement to arbitrate, Turner has produced Young's 2013 signed Acknowledgement of Mandatory Arbitration for all Employment Disputes that he

---

[1] Young does not dispute that Defendants have shown that the agreement is one that evidences a transaction affecting interstate commerce. Upon review, the Court finds that the agreement is one that evidences a transaction affecting interstate commerce.

received after he was mailed the 2013 DRA. This Acknowledgment does not contain the specific terms of the DRA nor does it contain Young's initials beside the specific provision assenting to the DRA. Yet, the text above Young's signature at the bottom of the Acknowledgment indicates that Young, by signing his initials and affixing his signature to the Acknowledgment, agreed to be bound by "all Company policies, rules, procedures, and regulations as a condition of employment." (Doc. 7-1 at Ex. 1.) Accordingly, by continuing to work at Turner, Young signaled his knowledge of Turner's Mandatory Arbitration of Employment Disputes and agreed to be bound by the DRA as a condition of his continued employment.

When the DRA was revised in 2017, Young was mailed a copy of the 2017 DRA.[2] The 2017 DRA specifically informed Young in its initial paragraph titled "Notice to New Employees/Re-Hires" that: "Even if you do not sign the Dispute Resolution Agreement, you will be bound by it in accordance with applicable state law." (*Id.* at Ex. 2.) Young then continued to work at Turner.

In sum, Young both signed an Acknowledgement of Mandatory Arbitration in 2013 after he was mailed a copy of the 2013 DRA and received an updated DRA in 2017, which informed him that he would be bound by the DRA even if he did not

---

[2] Plaintiff does not argue or present evidence indicating that he did not receive the DRA, or that he did not have knowledge of the DRA or its terms. Young instead argues that there is no agreement because he did not sign the DRA or initial his acceptance of the DRA in the Acknowledgment.

sign it, and continued to work at Turner through December 2017. Accordingly, Turner has met its burden to establish that an agreement to arbitrate existed.

Although Young did not place his initials by the provision specifically agreeing to abide by the terms of the DRA in the Acknowledgment or sign the 2017 DRA, Alabama law does not always require a signature in order to create a binding agreement between the parties. *See Ex Parte Rush*, 730 So. 2d 1175, 1178 (Ala. 1999); *See e.g., Baptist Health Sys., Inc. v. Mack,* 860 So.2d 1265, 1273 (Ala. 2003) (enforcing an arbitration agreement between an employee and employer where the terms of the arbitration agreement indicated that an employee's continued employment would indicate acceptance of the agreement).

> The existence of a contract may also be inferred from other external and objective manifestations of mutual assent. Unless a contract is required by a statute to be signed (the FAA contains no such requirement), or by the Statute of Frauds to be in writing . . . or unless the parties agree that a contract is not binding until it is signed by both of them (there is no evidence of such an agreement), it need not be signed by the party against whom enforcement is sought, provided it is accepted and acted upon.

*Ex parte Rush*, 730 So. 2d at 1177-78 (quotation marks and citations omitted); *S. Foodservice Mgmt., Inc. v. American Fidelity Assur. Co.*, 850 So. 2d 316, 319–20 (Ala. 2002).

The Acknowledgment Young signed was both titled "Acknowledgement of Mandatory Arbitration for all Employment Disputes" and contained a provision

indicating that Young's initials and signature on the Acknowledgement would indicate that he accepted Turner's policies and rules as a condition of his employment, which would include the DRA. *See Stiles v. Home Cable Concepts, Inc.*, 994 F. Supp. 1410, 1416 (M.D. Ala. 1998) ("there is no requirement that every single provision of a contract, including the arbitration clause, must be signed in order to form part of the agreement."). Accordingly, Plaintiff's assertion that there is no evidence of Plaintiff's intent to be bound and that he did not agree to or execute an arbitration agreement is due to be rejected.

In particular, the Court notes that a reasonable jury could not, in the absence of evidence presented by Young indicating that his failure to affix his initials was an intentional rejection of the arbitration provision, assume or find that Young's failure to initial the specific arbitration provisions was anything more than a clerical error when Defendant has presented other evidence suggesting that Young assented to be bound by the DRA. Young failed to initial not only the arbitration provision but also several other specific provisions in the Acknowledgment.[3] Consequently, a reasonable jury could not conclude that Young's failure to initial the arbitration provision was intentional. Ultimately, "[w]hen a competent adult, having the ability

---

[3] Although Young argues that he did not intend to be bound or agree to arbitrate, Young did not submit an affidavit or any additional evidentiary submission to support his argument that he did not agree to the DRA or intend to be bound by the DRA.

to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby." *Power Equipment Co. v. First Alabama Bank*, 585 So.2d 1291, 1296 (Ala. 1991). Accordingly, Plaintiff has not created a question of material fact as to the existence of an agreement to arbitrate.

Young's lack of signature on the 2017 DRA is not fatal as Young agreed in the 2013 Acknowledgement to arbitrate claims under the DRA and manifested his assent to the DRA under the terms of the 2017 DRA. The 2017 DRA that was sent to Young specifically informed him that he would be bound by its terms even if he did not sign it. (*See* Doc. 7-1 at Ex. 2); *Baptist Health,* 860 So.2d at 1274 ("[W]e conclude that [plaintiff], by continuing her employment with [defendant] subsequent to her receipt of the Program document, expressly assented to the terms. . . ."). Young has not presented evidence that he did not receive the 2017 DRA or that he did not continue to work at Turner following the distribution of the DRA. Accordingly, Turner has presented sufficient evidence that an agreement to arbitrate existed between the parties.

Recent Supreme Court precedent makes clear that the "parties [can] agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *See Henry Schein, Inc. v. Archer and*

*White Sales, Inc.*, 139 S. Ct. 524, 527 (2019); *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Parties specifically delegate such questions concerning enforceability to an arbitrator through so-called delegation provisions. *See e.g., Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017). "When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract as a whole, the federal courts may not review his claim because it has been committed to the power of the arbitrator." *Parnell v. CashCall, Inc.,* 804 F.3d 1142, 1146 (11th Cir. 2015). The Court may not ignore the parties' delegation of this threshold question. *See Carroll v. Castellanos*, 2019 WL 1305882, at *3 (Ala. 2019). Accordingly, "[o]nly if [the Court] determine[s] that the delegation clause is itself invalid or unenforceable may [it] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal.*, N.A., 835 F.3d 1331, 1335 (11th Cir. 2016).

The 2017 DRA specifically grants the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability, of this DRA, including, but not limited to, any claim that any part of this DRA is unenforceable, void, or voidable." (Doc. 7-1 at Ex. 2.) This clause provides clear and unmistakable evidence of the parties' intent to delegate to the arbitrator the gateway question of enforceability. *See e.g., Jones*, 866 F.3d at 1267 (finding the following

language as clear and unmistakable evidence of the parties' intent to arbitrate all gateway issues of an agreement, "Arbitrator…shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement.").

Young has challenged the arbitration agreement as a whole on the grounds that he did not agree to arbitration and execute an arbitration agreement. (Doc. 9 at 3.) The Eleventh Circuit has been clear that if a plaintiff does not specifically articulate a challenge to the delegation provision, the Court must "treat the delegation provision as valid, enforce the terms of the [] Agreement, and leave to the arbitrator the determination of whether the [] Agreement's arbitration provision is enforceable." *Parnell*, 804 F.3d at 1146 (citing *Rent-A-Center*, 561 U.S. at 72). Accordingly, any arguments Young may have as to the enforceability of the 2017 DRA are to be presented to the arbitrator because Young has not challenged the delegation provision.

## IV. CONCLUSION

For the reasons explained above, Turner's motion to compel arbitration (doc. 7) is due to be granted and Young's action dismissed without prejudice. Either party may move this Court to reopen the case upon the conclusion of arbitration and move

the Court to enforce any award resulting from the arbitral proceedings. An order consistent with this opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on July 3, 2019.

_____
L. Scott Coogler
United States District Judge

195126